CROSNER LEGAL, P.C.
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Adam C. York (*Pro Hac Vice* application forthcoming)
adam@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MATTHEW GARGUS, individually, and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| UPLEAD, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

CROSNER LEGAL, P.C.

Plaintiff Matthew Gargus ("Plaintiff") brings this class action complaint against Uplead, LLC (hereinafter "Uplead" or "Defendant"), a maker of sales prospecting software operating the publicly accessible online directory available at uplead.com. This action asserts violations of Colorado's Prevention of Telemarketing Fraud Act ("PTFA"), Colo. Rev. Stat. § 6-1-304, *et seq.* These allegations are grounded in counsel's investigation and are presented upon information and belief, except for those directly concerning Plaintiff, which are based on personal knowledge.

## INTRODUCTION

1.      This complaint seeks redress for Uplead's pervasive practice of compiling and commercially disseminating the cellular telephone numbers of Colorado residents without their explicit, affirmative consent. This conduct directly contravenes the letter and spirit of the PTFA, a vital piece of consumer legislation designed to protect the privacy of individuals, particularly regarding their mobile phone numbers, which are widely regarded as personal and private communication channels.

2.      The Colorado General Assembly enacted the PTFA with a clear legislative declaration recognizing the rapid increase in commercial telephone solicitation and the unique risks and potential for abuse it presents. The legislature found that "widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest." Colo. Rev. Stat. § 6-1-301.

3.      To address these concerns, an amendment to the PTFA, HB05-1288, was signed into law on May 27, 2005, explicitly prohibiting the commercial listing of a cell phone number in a directory without the owner's permission, effective September 1, 2005. This amendment aimed at protecting individuals from the

1

misappropriation of their personal information and to uphold privacy in an increasingly digital world. Specifically, Colo. Rev. Stat. § 6-1-304(4) states:

(a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:

(I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

4.    Despite this clear statutory prohibition, Defendant operates a website, uplead.com, which functions as a data aggregator, openly collecting and listing personal information—including cell phone numbers, job history, and email addresses—without explicit consent. Uplead touts that its directory includes "Real-time verified" "mobile numbers".[1] This data, sourced from various public records and third-party data brokers, is made readily available to anyone with internet access. Uplead monetizes this personal data, including the cell phone numbers of Colorado residents, through its publicly accessible directory, thereby profiting from the unauthorized disclosure of private information.

5.    This alleged conduct is not merely a technical violation; it exposes individuals to significant risks. The Federal Trade Commission ("FTC") has long warned about the potential dangers associated with data brokers, including the facilitation of harassment, stalking, identity theft, and vulnerability to fraudulent schemes.[2] Uplead's readily accessible compilation of personal data, including cell phone numbers, creates a fertile ground for malicious actors to exploit this information for harmful purposes, such as scams, phishing, and doxxing.

---

[1] https://uplead.com (last visited Aug. 27, 2025).

[2] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf

6.     Plaintiff brings this action to compel Defendant to cease its unlawful practices, protect the privacy rights of Colorado cell phone users, and recover statutory damages provided by the PTFA.

## PARTIES

7.     Plaintiff Matthew Gargus is, and has been at all relevant times, a resident of Boulder County, Colorado. Plaintiff's cellular telephone number was listed by Defendant in its directory, available at uplead.com, for commercial purposes. Defendant never requested, and Plaintiff never provided, affirmative consent, through written, oral, or electronic means, for such listing. In fact, Plaintiff has no relationship with Defendant whatsoever and did not discover Defendant's use of his personal information until shortly before filing this suit.

8.     Defendant Upload is a California limited liability company with its principal place of business in Covina, California. At all times during the class period, Defendant owned and operated the website with the URL uplead.com.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant (Defendant is a California corporation with its principal place of business in California); and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

10.     Defendant is a data broker for business-to-business sales prospecting that claims more than 160 million contacts. On information and belief, the proposed Class contains thousands of Colorado residents if not many more.[3] The

---

[3] A search for individuals whose locations are listed as Colorado returned more than 3 million results. While discovery will reveal the precise size of the proposed Class, the subset of individuals whose cell phone numbers are listed in Uplead's directory is likely to number in the tens or hundreds of thousands.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

proposed Class thus has more than 100 members.

11.    The proposed Class also has different citizenship than Defendant, as the Defendant is domiciled in California, while the proposed Class consists entirely of Colorado residents.

12.    Plaintiff seeks statutory damages of at least $300 per class member, as well as disgorgement and restitution. Plaintiff also seeks attorneys' fees. Thus, this litigation exceeds the $5 million requirement under 28 U.S.C. § 1332(d).

13.    This Court has general personal jurisdiction over Defendant because Defendant is organized and headquartered in California, and a corporation's "place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

14.    Venue in this District is proper because Defendant is subject to the personal jurisdiction of this Court and is thus deemed to reside in this District pursuant to 28 U.S.C. § 1391(c)(2).

### FACTUAL ALLEGATIONS

### OVERVIEW OF THE UPLEAD DIRECTORY

15.    Uplead operates as a data broker, gathering and then re-selling or sharing consumers' personal information. It provides a business-to-business "people search" for salespeople by compiling vast amounts of information about individuals from diverse sources, including public records, business records, telecommunications companies, social media, and other data brokers.

16.    On its website, Defendant explicitly markets its platform as a resource for contacting individuals using their cell phone numbers:



17.    The website, uplead.com, functions as a public directory, allowing anyone on the internet to search for individuals by name, location, company, or industry, among other criteria:

5

CROSNER LEGAL, P.C.

18.   Upon a search, the site provides a directory of matching contacts. For example, below is a screenshot of a search for individuals located within Colorado on the upload.com website (contact names are redacted):



19.   Clicking on a contact's name provides further details about that contact. Below is an example of Defendant's directory listing for Plaintiff:



20.   Upload sells access to individuals' cell phone numbers through "Credits", using which Upload's customers can "Unlock" cell phone numbers and email addresses. Credits are available to purchase via monthly or annual subscription plans, which start at $99 per month.

CLASS ACTION COMPLAINT



21. The collection and dissemination of these personal details, including cell phone numbers, serves a vital commercial purpose for Defendant. Data brokers like Uplead generate income primarily by selling access to and information about private citizens. This inherent commercial value of the data collected underscores the violation of the PTFA when consent is not obtained.

22. Defendant directly profits from its data publishing activities by selling monthly and annual subscription access for the ability to search for contact information about individuals, including Colorado residents. Selling individuals' contact information is the core of Uplead's business model, notwithstanding the fact that it offers a "Free" tier.

### DEFENDANT'S CONDUCT HARMS COLORADANS

23. Uplead's practices inflict tangible harm upon Colorado residents by undermining their privacy rights and exposing them to significant risks. The commercial value of consumer data is well-established, with the FTC recognizing that "data is currency" and that larger datasets yield greater potential for analysis

and profit.[4] By listing cell phone numbers without consent, Upload deprives Coloradans of the control over their personal data and its inherent economic value. Consumers are increasingly aware of this value and are willing to pay a premium for services that prioritize data protection.

24.    Defendant's collection and display of Coloradans' cell phone numbers without consent frustrates the legislative intent of the PTFA to safeguard privacy and protect consumers from telemarketing fraud.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons in Colorado whose cellular telephone numbers were listed on Defendant's website, www.uplead.com, during the applicable statute of limitations.

26.    Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

27.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

28.    The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

---

[4] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

29. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been injured by Defendant's practices.

30. Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. whether Defendant collected and publicly disseminated Plaintiff's and the Class's cellular telephone numbers;

b. whether Defendant unlawfully disclosed and continues to disclose its users' cellular telephone numbers in violation of the PTFA; and

c. whether Defendant disclosed Plaintiff's and the Class's cellular telephone numbers without consent.

31. Typicality: Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, had his cellular telephone number collected and disclosed by Defendant, without his consent.

32. Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the PTFA claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by

9

individual Class Members would create a risk of inconsistent and varying adjudications.

33.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

34.    Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

35.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE PREVENTION OF TELEMARKETING FRAUD ACT**
**COLO. REV. STAT. § 6-1-304, *ET SEQ.***

36.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

37.    Colo. Rev. Stat. § 6-1-304(4)(a) explicitly states that "[o]n or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing."

38.    Defendant has failed to comply with this PTFA mandate. Upload knowingly lists Coloradans' cell phone numbers. The website upload.com clearly provides users with the ability to search for individuals and obtain cellular phone numbers as part of its sales prospecting software. The very nature of the site, which aggregates and displays this data, demonstrates knowledge of the presence of cell phone numbers within its database.

39.    Upload's website, upload.com, undeniably functions as a "directory." As defined, a directory is an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names

CROSNER LEGAL, P.C.

and addresses of businesses in a particular area."[5] Defendant's operations fully align with this definition, as it allows users to search for names, email addresses, and phone numbers in a structured manner.

40.   Defendant engages in this conduct for a commercial purpose. Uplead's business model is based on collecting and providing access to personal data, a commodity with inherent monetary value. Uplead recognizes this fact; its subscription prices increase based on the number of searches that a person can conduct.

41.   Defendant never requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing." Instead, Uplead compiles and lists the cell phone numbers of Coloradans with whom it has no prior engagement, no connection, and who are often unaware of the site's existence or its unauthorized publication of their personal information.

42.   Defendant's misappropriation of Class Members' personal data, including its economic value, has directly infringed upon Class Members' PTFA privacy rights. This deprivation extends to the real, quantifiable value of such data. Furthermore, it has exposed Class Members to elevated and unnecessary risks of harassment, scams, and unwanted telemarketing solicitations.

43.   Thus, on behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to comply with the PTFA; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand

---

[5] *See* Oxford Learner's Dictionary, *Directory*, https://www.oxfordlearnersdictionaries.com/us/definition/english/directory.33 (last visited Aug. 25, 2025).

CROSNER LEGAL, P.C.

dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b. Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I).

c. Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense.

d. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, inter alia, an Order requiring Defendant to comply with the PTFA.

e. Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

f. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable.

g. Awarding such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

//

//

13

CLASS ACTION COMPLAINT

Dated: September 3, 2025

CROSNER LEGAL, P.C.

By:   */s/ Michael T. Houchin*

Michael T. Houchin

Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Adam C. York (*Pro Hac Vice application forthcoming*)
adam@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

Attorneys for Plaintiff

14

CLASS ACTION COMPLAINT